·J. S. GALBRAITH v. C. H. McCORMICK AND L. J. McCORMICK, *partners as C. H. & L. J. McCormick.*

1. MUTUAL ACCOUNTS; *Referee.* Where an action involves "the examination of mutual accounts," it may be referred by the court on its own motion, under ¿ 292 of the civil code. (*Williams v. Elliott,* 17 Kas. 523.)

2. PLEADINGS *Before a Justice of the Peace.* Pleadings in actions commenced before a justice of the peace are generally not required to be as formal as pleadings in actions commenced in the district court.

3. —————— Other matters discussed in the opinion.

*Error from Atchison District Court.*

ACTION brought by *C. H. & L. J. McCormick* against Trowbridge & Galbraith and *J. S. Galbraith,* to recover the sum of $216.94, claimed to be due from Trowbridge & Galbraith to the plaintiffs, and for the payment of which J. S. Galbraith was liable. The liability of J. S. Galbraith was based upon a letter, a copy of which is set out in the opinion. Trial at the June Term, 1879, of the district court, and judgment entered against *J. S. Galbraith* for $228.22 on the findings of fact made by the referee, to which he duly excepted, and brings the case here for review.

*Everest & Waggener,* for plaintiff in error.

*Hudson & Tufts,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This action was commenced before a justice of the peace, appealed to the district court, and there referred to a referee for trial, before whom a trial was had, which resulted in a judgment in favor of the plaintiffs below, who are now defendants in error, and against J. S. Galbraith, who was one of the defendants below, and who is now the plaintiff in error. The judgment was for $228.22, and costs. The plaintiff in error, J. S. Galbraith, now seeks to reverse that judgment by this petition in error.

I. The plaintiff in error claims that the court below erred in referring the case. The order of reference reads as follows:

"Now in this case come the parties, the plaintiffs, by their attorney, B. F. Hudson, and defendant P. Galbraith, by W. S. Greenlee, his attorney, and defendant J. S. Galbraith, by his attorneys, Everest & Waggener, and upon examination of the pleadings herein, and under the same, in connection with the statements and admissions of the respective attorneys for said parties, it appears, and is clearly made to appear, and is shown to the court, that this cause, under the issues therein, is properly the subject of reference, and that the trial of the issues therein will require the examination of mutual accounts between the parties respectively, and it will be necessary that the said respective parties, plaintiff and defendant, will be required as witnesses to prove and determine said accounts; it is therefore ordered that all the issues in this action, both of fact and of law, be referred to S. H. Glenn as referee, to which reference to said Glenn said plaintiffs, by their attorney, and said P. Galbraith, by his attorney, W. S. Greenlee, consent; said referee to report the facts found and conclusions of law separately on the first day of the June term of this court, A. D. 1879; to which order of reference defendant J. S. Galbraith duly excepts."

We presume the foregoing order was correctly made. The record brought to this court does not contain all the pleadings nor any of "the statements and admissions of the respective attorneys for said parties;" and hence we cannot so well tell as the district court could, whether this case was properly referred or not. However, from the pleadings brought to this court, which consist of the plaintiff's amended bill of particulars and the answer thereto of defendant J. S. Galbraith, we should think that the case was properly referred. It evidently appeared to the court below that the trial of the case would involve "the examination of mutual accounts," and therefore that the case might properly be referred under § 292 of the civil code, and under the authority of the case of *Williams v. Elliott*, 17 Kas. 523. We decide this question upon this authority: that there were a great many items in the account sued on in this case, on both sides of such account, can be known from the two pleadings above referred

to, but just how many items and the separate amount of each, we cannot tell.

II. The plaintiff in error makes the point, that the report of the referee was not filed within the time prescribed by the court. If this were true in fact, we suppose the point would be a good one. The plaintiff in error, however, did not make this point in the court below, and for a most excellent reason, as we suppose, and he should not make it here. It indicates that he has but little faith in his case. The point is over-ruled. The report was filed "within the time allowed by the court."

III. The bill of particulars of the plaintiffs below undoubt-edly stated a good cause of action. Pleadings in actions commenced before a justice of the peace are generally not re-quired to be as formal as pleadings in actions commenced in the district court; and no objection was made to this plead-ing, except an objection to the introduction of any evidence under it, because it did not state a cause of action.

IV. It was not substantial error, as against J. S. Gal-braith, for the referee to permit the plaintiffs to dismiss their action as against P. Galbraith. Judgment could properly be rendered against any one or all of the defendants.

V. Every substantial finding of fact made by the referee against J. S. Galbraith we think was amply sustained by the evidence. In some respects, the referee might have made the findings much stronger against Galbraith than he did.

VI. And we think the findings of fact support the judgment.

It is idle to talk about J. S. Galbraith not having notice of the acceptance by the McCormicks of his letter of guar-anty. Unless John M. Henry committed willful and corrupt perjury, J. S. Galbraith received actual notice of the same be-fore the McCormicks delivered any goods to the firm of Trowbridge & Galbraith, and J. S. Galbraith, at the time, said that it was all right. Henry's testimony was probably true, but there was sufficient evidence without Henry's; and from the evidence, J. S. Galbraith evidently had notice in

fact substantially of the reception of all the goods that the McCormicks delivered to Trowbridge & Galbraith at the various times at which they were delivered, but even if he did not receive any such notice, still it can make no difference under his guaranty. It was admitted by the parties that if the plaintiffs below were entitled to recover, the amount that was found by the referee was a correct amount.

We do not think that the court below committed any substantial error in the case; but, before closing this opinion, we wish to say something further with regard to said letter of guaranty, and a contract founded thereon. Said letter of guaranty reads as follows:

"ATCHISON, KANSAS, February, 1875.

"McCORMICK & BRO., *Chicago, Ill.—Gentlemen:* I will indorse any contract made by Trowbridge & Galbraith, of Atchison city, Kansas, with you to sell your implements and articles strictly on commission, and will be responsible for the fulfillment of the said contract on their part; but it is provided that said Trowbridge & Galbraith shall *not contract* to indorse or guarantee any notes received by them for the sale of goods and articles on commission.

"J. S. GALBRAITH."

It will be seen that said letter indorses "any contract," etc., for the sale of McCormick's "implements and articles," or "goods and articles," on commission, etc., provided that said Trowbridge & Galbraith should "not contract to indorse or guarantee any notes received by them for the sale of goods and articles on commission." Now Trowbridge & Galbraith did not in fact make any "contract to indorse or guarantee any notes;" nor did they in fact "indorse or guarantee any notes;" nor did they assume or become responsible for any debt or note due, or to become due, to the McCormicks. They did, however, make a contract that possibly went a little beyond what said guaranty contemplated.

The plaintiff in error says that said contract referred to certain printed instructions which were made a part of the contract, and which printed instructions provided that: "If at any time sales have been made by you" ('meaning Trow-

bridge & Galbraith) "to irresponsible parties without proper security, it is distinctly understood that you shall *assume* such notes, and personally become responsible to said C. H. & L. J. McCormick for the amount of such irresponsible sales, until they shall have been properly secured or paid."

Now we do not think that said printed instructions rendered said guaranty nugatory, inoperative, or void. Said proviso in the guaranty did not prevent the parties from making the contract for Trowbridge & Galbraith to be responsible for any negligence which they might be guilty of in selling articles on credit to or in taking notes from "irresponsible parties without proper security," and to "assume" the debts and notes in such cases. For the law would make them liable in such cases, whether they expressly agreed to be liable, or not. There has never been any attempt, however, on the part of the plaintiffs to make Trowbridge & Galbraith or J. S. Galbraith liable for any debt or note due or to become due to the plaintiffs for any articles sold on commission by Trowbridge & Galbraith for the plaintiffs. The claim of the plaintiffs is for money actually received and collected by Trowbridge & Galbraith for the plaintiffs, and not paid over to them.

The judgment of the court below will be affirmed.

BREWER, J., concurring.

HORTON, C. J., not sitting.