No. 47,333

State of Kansas, *Appellee,* v. Nathaniel Reed, *Appellant.*

(520 P. 2d 1314)

Opinion filed April 6, 1974.

*Michael J. Peterson,* of Kansas City, argued the cause, and *Jay H. Vader,* of Kansas City, was with him on the brief for the appellant.

*Nick A. Tomasick,* district attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

Foth, C.: Appellant was convicted by a jury of felony first degree murder and he appeals.

His prosecution arose out of the September 4, 1972 robbery of $33.30 from the U-Totem Store No. 502 at 846 Central Avenue, Wyandotte County, Kansas. During the course of this robbery the appellant exhibited, in a threatening manner, a .22 caliber revolver with black electrician's tape on the handle. When the fruits of the robbery turned out to be much less than expected the appellant held the revolver to the head of the store clerk, one Dennis Ingram, and demanded the rest of it. When the rest was not forthcoming the appellant pulled back the hammer on the revolver and fired. The bullet struck the victim in the eye and caused his immediate demise.

The appellant and his confederate in crime, Bobby Charles Osbey, were apprehended immediately upon leaving the store. A more detailed account of the facts of this crime are set out in the companion case of *State v. Osbey,* 213 Kan. 564, 517 P. 2d 141, where the conviction of the appellant's confederate was affirmed.

Overall the appellant claims six trial errors. Of these, four were considered in some degree by this court in *State v. Osbey*, supra, and no error was found. Two are peculiar to this case and will be considered first.

Appellant, a black man, first contends that the trial court should have sustained his objection to the jury panel because it was not representative of the racial make-up of the surrounding community. This contention is based upon the fact that the sixty member jury panel contained five blacks, or 8.5%, while the community at large, according to the appellant's estimate, is 20 to 25% black.

In dealing with such claims of discrimination this court looks to the method of selection of the jurors and not merely the racial make-up of a particular jury panel. A defendant is not necessarily entitled to be tried by a jury with even a single member of his race thereon. *Lee v. State*, 204 Kan. 361, 461 P. 2d 743; *Scoggins v. State*, 203 Kan. 489, 454 P. 2d 550; *Swain v. Alabama*, 380 U. S. 202, 85 S. Ct. 824, 13 L. Ed. 2d 759. He is entitled, however, to have a jury panel drawn from a list which is free from systematic and purposeful discrimination. *Lee v. State*, supra; *State v. Stewart*, 208 Kan. 197, 491 P. 2d 944. No evidence of such discrimination appears in this record.

The appellant makes no claim that the list from which these jurors were drawn was not reflective of the racial make-up of the community. He makes no claim that the method used in selecting this panel from the master list was in any way designed to purposefully exclude members of his race. The trial court, in considering the appellant's motion for a new trial, took judicial notice of the fact that this panel was obtained by use of a data processor and that "we have no way of telling how many blacks and how many whites we are going to get. This is taken from the census enumeration rolls and the voter registration rolls."

The appellant bases his claim on the racial make-up of this one jury panel. That is not enough. Further, even if his claim were discrimination in the compilation of the master roll from which the panel was drawn, some proof would be required. A bald assertion in appellant's brief does not establish a *prima facie* case. *Scoggins v. State*, supra; *State v. Brothers*, 212 Kan. 187, 510 P. 2d 608.

Appellant's second new contention is that the trial court should have instructed on lesser included offenses.

While it is the requirement of K. S. A. 1973 Supp. 21-3107 (3),

that instructions on lesser included offenses be given, this duty arises only where there is evidence of circumstances under which the appellant might have reasonably been convicted of the lesser offense. *State v. Masqua,* 210 Kan. 419, 502 P. 2d 728.

In the past this court has held that in a murder committed during the commission of a felony the usual rule requiring instructions on lesser included offenses does not apply. *State v. Germany,* 173 Kan. 214, 245 P. 2d 981; *State v. Masqua,* supra. If a murder is committed while engaged in a felony the felonious conduct itself is held tantamount to the elements of deliberation and premeditation which are otherwise required for first degree murder. *State v. Osbey,* supra; *State v. Keleher,* 74 Kan. 631, 87 Pac. 738.

Therefore, to support a conviction for felony murder all that is required is to prove that a felony was being committed which was inherently dangerous to human life, and that the homicide was a direct result of the commission of that felony. *State v. Moffitt,* 199 Kan. 514, 431 P. 2d 879, Syl. ¶ 5. If such proof is produced the only possible conviction can be that of first degree murder under the felony murder rule.

This reasoning is aptly explained in *State v. Masqua,* supra, where the appellant was charged with first degree murder and forcible rape. His request for an instruction on the lesser included offenses of second degree murder and manslaughter was denied. This court, in upholding the trial court's denial of the instruction, stated:

". . . It follows that if the appellant was present at the rape, the mere participation in that felony would supply the elements of deliberation and premeditation, both of which must be absent from second degree murder and manslaughter. Either the rape was perpetrated by the appellant and he necessarily is responsible for the murder, or he was not present at the rape where the killing occurred and not guilty of any degree of homicide." (P. 425.)

So here, either appellant was present when the robbery and attendant murder occurred, or he was not. An instruction on lesser included offenses would have been inappropriate.

The remaining four allegations of error were all considered in *State v. Osbey,* supra. We note them briefly here, and the reader is referred to the opinion in *Osbey* for a more detailed explanation of the court's reasoning.

The first of these results from the *voir dire* examination of the prospective jury. The trial court refused to allow defense counsel to question the jury panel as to their feelings concerning the re-

quisite intent for an individual to commit a crime. In dealing with this identical issue in *Osbey*, the court invoked the rule that the "extent of examination of jurors on *voir dire* rests largely in the discretion of the trial court and this court will not interfere unless abuse of discretion is clearly shown (*State v. Guffey*, 205 Kan. 9, 468 P. 2d 254)." (P. 569.) The court found that no prejudice or abuse of discretion on the part of the trial court appeared.

The second is based upon the trial court's granting permission to the district attorney to amend the information after the jury had been selected and sworn. The year "1972" had been omitted after the day and month in the information, and its insertion was allowed. In the *Osbey* case the complaint was directed, not at the granting of motion to amend, but at the state's failure to insert the missing year after the permission to do so had been granted. The court considered this to be a "simple clerical omission" and no prejudice was found.

In *State v. Hill*, 211 Kan. 239, 505 P. 2d 704, the amending of an information after the jury had retired but before the verdict was handed down was upheld by this court. In that case the information incorrectly stated that the gun used in a murder was an automatic when in fact it was a semi-automatic. The court stated, "The amendment did not in anywise change the nature of the crime charged. It simply was in accord with the evidence adduced. . . . The amendment came as no surprise to appellant and manifestly he was in nowise prejudiced by it." (P. 242.)

There was no claim of surprise by the appellant here. There was certainly no change in the nature of the crime charged. As carefully noted by the court in considering this amendment in *Osbey*, "There is no statute of limitation for the offense of murder (K. S. A. 1972 Supp. 21-3106 [1]), appellant well knew the year of the alleged offense. . . ." (P. 569.) No error appears to this court in allowing this amendment.

The third claim goes to the use by the district attorney of witnesses and a photograph for the purpose of describing the condition of the victim and the cause of death, despite the offer by appellant to stipulate to those facts. There being no question as to the death or its cause, so the argument goes, the only purpose for the introduction of such evidence was to inflame the jury.

As to the photograph itself, it was carefully shielded from the jury's view while it was being identified. When it was offered the

court sustained the objection of the appellant and did not admit it into evidence. This allegation was considered by the court in *Osbey* and summarily rejected as being "utterly frivolous."

As to the testimony identifying the photograph, the prosecution assumes the burden of proving, as part of its case in chief, all elements of the crime charged. The testimony of witnesses to prove these elements, including the fact and manner of death, the violent nature of death, and to corroborate the testimony of other witnesses, is relevant and admissible. This is true even if the appellant concedes the death and cause of death of the victim. *State v. Campbell,* 210 Kan. 265, 500 P. 2d 21; *State v. Martin,* 206 Kan. 388, 480 P. 2d 50.

A review of the record fails to reveal any particularly graphic or gruesome descriptions of the victim which would tend to prejudice the jury. The references to the body and its condition were made either as identification or as part of a description of the events of the evening and were not in any way dwelled upon by the prosecution. They were not, in this court's view, prejudicial or inflammatory.

In the last point which was touched upon in the *Osbey* case the appellant claims that the chain of custody of several incriminating items was broken and therefore their introduction into evidence was error. The appellant's complaint here is expressed in more detail than it was in the *Osbey* case, but it is essentially the same. The court in that case found the appellant's complaint to be "trivial."

In considering this objection anew the court has made a careful trace of the chain of custody to each item in question. As to the money and the .22 caliber shells, taken from Osbey immediately after the murder, there is a clear and uncontradicted chain of custody. As to the gun and the spent bullet taken from the brain of the victim, there is conflict in the testimony of the witnesses as to who had possession of the objects at certain particular times. Nothing appears, however, that would destroy the reasonable certainty that no material alterations of the objects occurred. That is the test that must be applied. *State v. Tillman,* 208 Kan. 954, 494 P. 2d 1178.

Even if the chain of custody of these items was such as to destroy the reasonable certainty that they were not the ones used in the crime, their admission would not be prejudicial to the appellant. There is ample evidence, through the uncontraverted testi-

mony of several witnesses, to sustain the conviction of the appellant without ever introducing these into evidence at all.

There is no question that this appellant shot the victim in the head at the time of the robbery. There is also no question that the victim died shortly thereafter of that gunshot wound. Whether it was this particular gun or bullet or some other is entirely immaterial. Even if there was error in the admission of this evidence —and this court makes no such finding—it was nonprejudicial.

We find no merit in appellant's allegations of error and the judgment is affirmed.

APPROVED BY THE COURT.